**M. Christie Helmer**, OSB No. 743400
chris.helmer@millernash.com
**John F. Neupert**, P.C., OSB No. 783168
john.neupert@millernash.com
**Sanja Muranovic**, OSB No. 171774
sanja.muranovic@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  503.224.5858
Facsimile:  503.224.0155

Attorneys for Defendant Dutch Tecsource B.V.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| MEDURI FARMS, INC., an Oregon corporation,<br><br>            Plaintiff,<br><br>    v.<br><br>DUTCHTECSOURCE B.V.,<br><br>            Defendant. | Case No. 3:17-cv-00906-SI<br><br>DEFENDANT'S MOTION TO REFER PARTIES TO ARBITRATION AND STAY PROCEEDINGS<br><br>**ORAL ARGUMENT REQUESTED** |

## **LR 7-1 CERTIFICATION**

Undersigned counsel for defendant Dutch Tecsource B.V. ("DTS") certifies, in compliance with Local Rule 7-1, that the parties made a good faith effort via telephone conferences on July 13 and 21, 2017, to resolve the dispute and were unable to do so.

Page 1 -    Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings

4831-5903-2907.5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## MOTION

Pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.*, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, DTS respectfully moves the Court for an order (1) referring plaintiff Meduri Farms, Inc.'s ("Meduri") claims to arbitration in accordance with the arbitration provision of the parties' written agreement that provides "all disputes arising out of or in connection with the Contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules"[1] and (2) staying this action during the pendency of that arbitration.

This motion is based on the following statement of facts, as supported by the Declaration of Justin Wakker, the records and files herein and the memorandum of law set forth below. DTS appears solely for the purpose of moving this court to refer the parties to arbitration and seeking a stay of these proceedings and expressly reserves all other rights, objections, and defenses.

## STATEMENT OF FACTS

This lawsuit[2] arises out of an international business transaction between an Oregon company and a Dutch company. As alleged in its first amended complaint ("FAC"), Meduri, an Oregon company, "produces a wide range of dried fruit products, which it sells* * *throughout the world." FAC, ¶ 6. Meduri holds itself out as "the largest processor of

---

[1] Declaration of Justin Wakker ¶ 5 ("Wakker Dec.").

[2] Meduri commenced this lawsuit in Polk County, and it was removed by DTS to this court on June 8, 2017. Dkt 1.

Page 2 -   Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings

4831-5903-2907.5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

dried infused blueberries in the world."  *See* http://medurifarms.com/fruit-category/blueberries/, last visited July 11, 2017.

DTS is a Dutch company that for over 20 years has engineered and manufactured machines and food processing lines, which it sells worldwide to food processing companies like Meduri.  Wakker Dec. ¶ 2.

In 2015, Meduri and DTS began discussions for DTS to engineer and manufacture a dried fruit infusion line for Meduri.  Wakker Dec. ¶ 3; FAC ¶ 9.  After several months, the parties' discussions culminated in an agreement.  The agreement was formed by the following:  (i) DTS sent Meduri a detailed, 33-page price Quotation dated August 24, 2015, for two infusion lines, (ii) at Meduri's request, DTS sent Meduri a two-page "Price Overview" stating the price for a single infusion line, based on the Quotation, (iii) Meduri confirmed its order on September 19, 2015, for a single line based on the pricing provided, and (iv) Meduri paid the 10% down payment for the line (the "Agreement").  Wakker Dec. ¶¶ 4-7. In the year that followed, Meduri paid DTS 90% of the total purchase price for the line, as agreed.  Wakker Dec. ¶ 9.  DTS delivered and installed the infusion line at Meduri's place of business in Oregon in the fall of 2016.  Wakker Dec. ¶ 9.

The remaining 10% to be paid under the Agreement remains unpaid and is due and owing to DTS.  Wakker Dec. ¶ 10.  Meduri's failure to pay for the infusion line, and its failure to pay for certain equipment and spare parts auxiliary to the line ordered in 2015 and 2016, is the subject of DTS's Request for Arbitration filed on July 10, 2017, with the

Page 3 -    Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings

4831-5903-2907.5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

International Chamber of Commerce ("ICC") in Paris, France[3] ("Request").  *See* Request, Wakker Dec. ¶ 11, Ex A.

DTS initiated arbitration with the ICC because the parties expressly agreed to arbitration in the Agreement for the infusion line and the agreements for the three auxiliary orders.  Wakker Dec. ¶ 12.  The parties did so by incorporating into their Agreement and the follow on agreements what are commonly known as "Orgalime Conditions."  The August 24, 2015, Quotation from DTS to Meduri explicitly states "Orgalime Conditions are applicable.  At request we will send you a copy."  Wakker Dec. ¶ 4.  Meduri alleges in the FAC that its claim for breach of contract is based on the Quotation.  FAC ¶¶ 13, 14, and 39.

Orgalime (Organisme de Liaison des Industries Métalliques Européennes), known in English as the European Engineering Industries Association, is a European organization representing the interests of European businesses in the mechanical, electrical, and other similar industries.  *See* http://www.orgalime.org/page/about-us, last visited July 11, 2017.  Among other things, Orgalime publishes general terms and conditions that industry members commonly incorporate into their agreements when doing business internationally.  The Orgalime Conditions are "contractual provisions that address matters such as risk of loss, force majeure, title, and timing of delivery and payment."  *Al Rushaid v. National Oilwell Varco, Inc.*, 757 F.3d 416, 421 (5th Cir. 2014).  "As is common in the commercial context, the [Orgalime Conditions] are designed to serve as a foundational 'set of general conditions for the supply of products, which could be used worldwide.'  On top of this foundation, parties may add or modify terms in order

---

[3] The ICC's International Court of Arbitration was established in Paris in 1923 and "remains the world's leading international commercial arbitration institution."  Gary B. Born, International Commercial Arbitration: Commentary and Materials 13 (Kluwer 2nd ed. 2001).

Page 4 -    Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings

4831-5903-2907.5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

to tailor the contract to their specific needs." *Id*. (parties found to have agreed to arbitrate because they included Orgalime as part of their agreement). The Agreement did not otherwise have any standard set of terms and conditions as is common in a significant sales transaction.

While it did not request a copy of the Orgalime Conditions referenced in the Quotation despite DTS's offer to provide one, Meduri did not take issue with or otherwise object to the language of the Quotation stating "Orgalime Conditions are applicable." Wakker Dec. ¶ 4. Nor did Meduri object to the follow on agreements, all of which include Orgalime Conditions. Wakker Dec. ¶ 13. By acceding to this language, Meduri and DTS incorporated into their Agreement the Orgalime SI 14 ("General Conditions for the Supply and Installation of Mechanical, Electrical and Electronic Products"). Wakker Dec. ¶ 5. Among other things, these conditions, like the other forms of Orgalime Conditions, provide that "all disputes arising out of or in connection with the Contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules." Wakker Dec. ¶ 5; Orgalime SI 14 at ¶ 78.

For this reason, the Court must refer the parties to arbitration before the ICC, where Meduri may assert its claims as counterclaims in the ICC proceeding already initiated by DTS.

## MEMORANDUM OF LAW

Because DTS and Meduri agreed to arbitrate "all disputes" arising out of or in connection with their Agreement in accordance with the ICC's Rules of Arbitration, they thereby agreed that the ICC arbitrator(s) would decide all "gateway" issues of arbitrability. Gateway issues, including whether an agreement to arbitrate even exists, can be expressly delegated to the

4831-5903-2907.5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

arbitrator if the parties "clearly and unmistakably" provide for such a delegation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); *Portland General Electric Co. v. Liberty Mutual Ins. Co., et al*, 16-35628, 2017 WL 2925013, at *3 (9th Cir. July 10, 2017). Here, DTS and Meduri clearly and unmistakably delegated these gateway issues to the arbitrator(s). For this reason alone, the Court should refer the parties to arbitration and stay these proceedings until the arbitration is concluded.

But, even if the Court does not find that DTS and Meduri clearly and unmistakably delegated gateway issues to the arbitrator(s), their agreement to arbitrate is valid and enforceable. And because their agreement to arbitrate was made in the context of an international commercial transaction, it must be enforced in accordance with the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), 9 U.S.C. § 201 *et seq*., and the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq*.

**I.    This Court must uphold the parties' clear and unmistakable agreement to delegate "gateway" issues such as arbitrability to the arbitrator(s).**

By agreeing to arbitrate "all disputes" in accordance with ICC Rules, DTS and Meduri expressly agreed that the arbitrator(s) shall also decide gateway issues, including whether an agreement to arbitrate exists in the first place.

"[The] question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options*, 514 U.S. at 943. Such questions can be delegated to the arbitrator if the parties "clearly and unmistakably" provide for such delegation. *Id*. at 939. The parties' intent to delegate gateway issues to an arbitrator is deemed clear and unmistakable when the parties' agreement provides for arbitration in conformance with

4831-5903-2907.5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

particular arbitration rules and those rules in turn specify that the arbitrator will decide the scope of his or her own jurisdiction. *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1073 (9th Cir. 2013).

As the Ninth Circuit has determined, the incorporation of ICC Rules into an arbitration agreement is clear and unmistakable evidence that the parties' intended to delegate gateway issues to the arbitrator(s); this is because Article 6(3) of the ICC Rules "makes clear that the arbitrators are vested with the authority to determine questions of arbitrability." *Portland General Electric*, 2017 WL 2925013 at *1.[4] "Many courts have concluded that this principle is even stronger in reference to an arbitration agreement incorporating ICC Rules, given that ICC Rules specifically require the arbitrators to determine whether a claim is arbitrable if that issue is raised by one of the parties." *Silec Cable S.A.S. v. Alcoa Fjardaal, SF*, CIV. 12-01392, 2012 WL 5906535, at *18 (W.D. Pa. Nov. 26, 2012) (citing *Shaw Group Inv. v. Triplefine Intern. Corp.*, 322 F.3d 115, (2d Cir. 2003); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 472–73 (1st Cir. 1989).

The ICC Rules specifically provide that whether or not an arbitration agreement *exists at all* is to be determined by the arbitrator(s):

> If any party against which a claim has been made does not submit an Answer, or if any party raises one or more pleas **concerning the existence, validity or scope of the arbitration agreement** or

---

[4] The same is true when parties incorporate rules of other arbitration organizations. *Oracle*, 724 F.3d at 1073 (the "incorporation of the UNCITRAL rules into the parties' arbitration provision constitutes clear and unmistakable evidence that the parties intended to arbitrate arbitrability"); *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011) (finding clear and unmistakable delegation where the parties incorporated by reference the rules of the American Arbitration Association); *Wal-Mart Stores, Inc. v. PT Multipolar Corp.*, 202 F.3d 280 (9th Cir. 1999) (also finding that the parties agreed to have the arbitrator decide the gateway issue of arbitrability by virtue of incorporating UNCITRAL rules into their agreement).

Page 7 -   Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings

4831-5903-2907.5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

concerning whether all of the claims made in the arbitration may be determined together in a single arbitration, the arbitration shall proceed **and any question of jurisdiction or of whether the claims may be determined together in that arbitration shall be decided directly by the arbitral tribunal** * * *. ICC Rules, Article 6(3) (emphasis added).

The Ninth Circuit has found that Article 6(3) "makes clear that the arbitrators are vested with the authority to determine questions of arbitrability." *Portland General Electric*, 2017 WL 2925013, at *3-4. Thus, DTS and Meduri effectively delegated the issue of arbitrability, that is, the existence of a valid agreement to arbitrate, to the arbitrator(s). For this reason, the Court should refer the parties to arbitration and stay these proceedings until the arbitration is concluded.

## II.     But, even if the issue of arbitrability is for the Court, the Court is nonetheless required to refer the parties to arbitration.

Even if the Court does not find that DTS and Meduri delegated gateway issues to the arbitrator(s), their agreement to arbitrate is valid and must be enforced in accordance with the New York Convention and the FAA.

### A.     The parties agreed to arbitrate this dispute.

The first step in evaluating whether Meduri and DTS's agreement to arbitrate must be enforced in accordance with the New York Convention and the FAA is determining whether the parties did in fact agree to submit any disputes to arbitration. To decide this threshold issue of arbitrability, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 533 (3d Cir. 2009); *Brown v. BYRV, Inc.*, 3:14-CV-01213-AC, 2015 WL 4507159, at *1 (D. Or.

Page 8 -    Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings

4831-5903-2907.5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

July 24, 2015).

Oregon law subscribes to the objective theory of contracts. *Brown*, 2015 WL 4507159 at *8 (citing *Harty v. Bye*, 258 Or. 398, 403 (1971)). "Under this theory, mutual assent, or a 'meeting of the minds,' may be expressed through words or 'inferred from the actions of the parties.'" *Id*. (citing *Bennett v. Farmers Ins. Co. of Oregon*, 332 Or. 138, 148 (2001)). "'[W]hether the parties entered into a contract * * * depends on whether the parties **manifest assent** to the same express terms.'" *Id*. (citing *Newton/Boldt v. Newton*, 192 Or. App. 386, 392 (2004) (emphasis added).

The parties' objective manifestations of intent are "'measured by whether a reasonable person would construe a promise from the words and acts of the other.'" *Crown Cork & Seal USA, Inc. v. Behurst*, 3:10-CV-251-HZ, 2012 WL 112490, at *8 (D. Or. Jan. 12, 2012) (citing *Wooton v. Viking Distrib. Co., Inc.*, 136 Or. App. 56, 59 (1995)). Such a manifestation "'forms the contract **regardless of the intent of the acceptor**.'" *Crown Cork*, 2012 WL 112490 at *8 (citing *Ken Hood Constr. Co. v. Pac. Coast Constr., Inc.,* 201 Or. App. 568, 578 (2005)) (emphasis added). In other words, it does not matter whether *both* parties *actually intended* to agree to a particular proposed term. Rather, it matters whether one party would have reasonably understood the counter-party's failure to object to the proposed term as agreement to that term.

Parties can incorporate by reference into their agreement other, external writings, including those containing arbitration clauses, regardless of whether the parties read or even realized the exact terms of what they were incorporating. For example, in *Brown*, where one party argued that an arbitration clause should not be enforced because the party never saw or signed the arbitration clause, the court concluded to the contrary because the arbitration clause

Page 9 -    Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings

4831-5903-2907.5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

was found in an external writing that was otherwise incorporated by reference into the parties' underlying agreement, thereby becoming a part of it. 2015 WL 4507159 at *8. "Where a written instrument refers in specific terms to another writing, the other writing is a part of the contract," and "'the contracting parties have an obligation to read the contract" in its entirety. *Id.* (citing *Nw. Pac. Indem. Co. v. Junction City Water Control Dist.*, 295 Or. 553, 558 (1983) and *Franklin v. W. Pac. Ins. Co.*, 243 Or. 448, 453 (1966)).

Here, the August 24, 2015, Quotation from DTS to Meduri specifically states "Orgalime Conditions are applicable." Wakker Dec. ¶ 4. DTS intentionally included the Orgalime Conditions as part of its contract, as it regularly does when doing business internationally. Wakker Dec. ¶ 5. Meduri had a duty to read the Quotation and the referenced conditions Meduri accepted. If it did not wish to be bound by any portion of them, it was required to say so or it was bound. Meduri did not take issue with or otherwise object to this provision of the Agreement (or to the Orgalime Conditions that were part of the follow-on agreements). Meduri manifested its assent to the Quotation's terms in its September 19, 2015, e-mail and by paying the 10 percent deposit, thereby creating a contract between the parties according to the Quotation and the single line Price Overview.

DTS and Meduri, therefore, agreed to arbitrate "all disputes" arising out of their Agreement. *Al Rushaid*, 757 F.3d at 421 (parties agree to arbitrate when they include Orgalime Conditions as part of their agreement); *see also Standard Bent Glass Corp v. Glassrobots Oy*, 333 F.3d 440, 447-48 (3d Cir. 2003) (parties agreed to arbitrate by incorporating Orgalime conditions into their agreement even though one party never received a copy of the Orgalime conditions) ("Standard Bent Glass should have advised Glassrobots it had not received Orgalime

Page 10 -   Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings

4831-5903-2907.5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

S92, if that were the case.").  Here too, by incorporating the Orgalime Conditions, Meduri and DTS agreed that, "all disputes arising out of or in connection with the Contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules."  Orgalime SI 14 at ¶ 78.

  **B.** **Both the New York Convention and the FAA require this Court to enforce the parties' agreement to arbitrate this dispute.**

Meduri and DTS's agreement to arbitrate must be enforced under two federal statutes:  the New York Convention, which is implemented through 9 U.S.C. § 201 *et seq.*, and the FAA, 9 U.S.C. § 1 *et seq.*  Both statutes require Meduri and DTS to arbitrate this dispute.

  *1.* *Long-established federal and international policies strongly favor enforcing international agreements to arbitrate.*

Chapter one of the FAA, 9 U.S.C. §§ 1-18, embodies a domestic, national policy favoring arbitration.  *Preston v. Ferrer*, 552 U.S. 346, 353, 128 S. Ct. 978, 979, 169 L. Ed. 2d 917 (2008) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984)); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983).  The FAA's second chapter, 9 U.S.C. §§ 201–08, is an enabling statute that implements the New York Convention and similarly embodies a liberal policy favoring arbitration agreements in international commerce.  *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n.15, 94 S. Ct. 2449, 2457 n.15, 41 L. Ed. 2d 270 (1974).

The New York Convention and the FAA operate concurrently.  *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 341 (5th Cir. 2004).  In fact, the federal legislation implementing the New York Convention specifically incorporates other provisions of the "domestic" FAA provided that such provisions are "not in conflict" with the New York Convention.  9 U.S.C. § 208.  The Supreme Court has explained that "[t]he goal of the

Page 11 -    Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings

4831-5903-2907.5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Convention, and the principal purpose underlying American adoption and implementation of it [through the FAA], was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk*, 417 U.S. at 520 n.15.

"A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is, therefore, an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction." *Id*. at 516.  Failure to enforce an international arbitration agreement "would not only frustrate these purposes, but would invite unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages." *Id*. at 516-17.  Courts have, therefore, found that the strong federal policy favoring arbitration applies with special force in the field of international commerce. *Century Indem.*, 584 F.3d at 523 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 631, 105 S. Ct. 3346, 3356, 87 L. Ed. 2d 444 (1985)).

2. *The New York Convention mandates arbitration of this dispute.*

The parties' Agreement to arbitrate their dispute before the ICC must be enforced under the New York Convention.  Article two of that Convention provides that "[a court] shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed."

In determining whether to enforce an arbitration agreement under the New York Convention, courts generally evaluate four factors. *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654–55 (9th Cir. 2009) (citing *Bautista v. Star Cruises*, 396 F.3d 1289, 1294–95 (11th Cir.

Page 12 -    Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings

4831-5903-2907.5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

2005) and *Standard Bent*, 333 F.3d at 449 n.1). "These four [factors] require that (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states." *Id.*[5]

       Here, all four factors are satisfied. As discussed above, a written arbitration agreement exists. The Orgalime Conditions explicitly incorporated into the parties' Agreement provide: "All disputes arising out of or in connection with the Contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules." Orgalime SI 14 at ¶ 78. The first factor is satisfied.

       The second factor is also satisfied because the Agreement provides for arbitration in the territory of a signatory of the Convention. *See Standard Bent*, 333 F.3d at 449 n.13 (finding all four factors satisfied where parties incorporated Orgalime Conditions into their agreement). Namely, the Orgalime Conditions specify that arbitration will be conducted in accordance with the ICC Rules, which in turn provide that the ICC will determine the location of arbitration absent an agreement among the parties. ICC Rules, Art. 18 § 1. Here, DTS has already initiated arbitration with the ICC for claims that it has against Meduri arising out of the same Agreement; in initiating the arbitration, DTS proposed that the arbitration hearing be conducted in Amsterdam because DTS and its witnesses are located near Amsterdam. Request

---

[5] Article two of the New York Convention does not require the arbitration agreement to designate a place of arbitration.

Page 13 -   Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings

4831-5903-2907.5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

p. 6, Exhibit E to Wakker Dec.  Alternatively, the arbitration could take place in Paris, where the ICC is headquartered, or in New York, where the ICC also has an administrative office.  Under any realistic scenario, the second factor is satisfied because the Netherlands, France, and the United States are all signatories of the Convention.  *See* Contracting States, The New York Arbitration Convention, last visited July 9, 2017, http://www.newyorkconvention.org/ countries.

The third factor is also satisfied because the legal relationship between DTS and Meduri is commercial in nature; the parties' Agreement embodies a commercial transaction.  Meduri agreed to purchase an installed infusion system from DTS in exchange for payment of €2.964.000,00, and Meduri's claims against DTS arise out of this commercial transaction.

Finally, the Agreement at issue is not solely between American citizens.  DTS is a Dutch company.  Because all four factors for enforcing an arbitration agreement under the New York Convention are satisfied, this Court must refer Meduri's claims against DTS to arbitration as provided in the Orgalime Conditions.

    3.    *The FAA also mandates arbitration of this dispute.*

Even if the New York Convention did not apply, which it does, the parties' agreement to arbitrate would still be enforced under the FAA.  Section two of the FAA makes a written arbitration provision in a "contract evidencing a transaction involving commerce * * * valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract."  9 U.S.C. § 2.  This general policy favoring arbitration means that when a contract meets this requirement, a court is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.  *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1017 (9th Cir. 2016) (citing

Page 14 -    Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings

4831-5903-2907.5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000)). If the answer is yes, then like the New York Convention, the FAA requires enforcement of the arbitration agreement in accordance with its terms. *Chiron*, 207 F.3d at 1130.

As discussed, Meduri and DTS expressly incorporated the Orgalime Conditions into their Agreement. The Conditions contain a valid, written agreement to arbitrate before the ICC. The parties are therefore required to arbitrate.

Moreover, the arbitration clause in the Orgalime Conditions clearly encompasses the dispute at issue: "**All disputes** arising out of or in connection with the Contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules." Orgalime SI 14 at ¶ 78 (emphasis added). Meduri's claims against DTS as set forth in the FAC are within the scope of this agreement to arbitrate.

For these reasons, the FAA "'leaves no place for the exercise of discretion by a district court,'" and therefore, the Court must refer the parties to arbitration. *Chiron*, 207 F.3d at 1130 (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 205 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)).

       **C.**     **The matter should be stayed pending arbitration.**

The Court is required to stay an action whenever the parties to it have agreed in writing to submit their claims to arbitration. 9 U.S.C. § 3.

Section 3's requirement for a stay applies with equal force to domestic and international disputes because Chapter 1 of the FAA applies to proceedings involving the New York Convention to the extent they do not conflict. 9 U.S.C. § 208; *see also China Nat. Metal*

Page 15 -   Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings

4831-5903-2907.5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Products Import/Export Co. v. Apex Digital, Inc.*, 155 F. Supp. 2d 1174, 1179-80 (C.D. Cal. 2001). As a result, this Court should both refer the parties to arbitration and stay these proceedings until the arbitration is concluded.

## CONCLUSION

For the foregoing reasons, DTS respectfully requests that the Court grant its motion to refer the parties to arbitration and stay proceedings so DTS and Meduri can arbitrate their dispute at the ICC in accordance with their Agreement.

DATED: July 21, 2017.

MILLER NASH GRAHAM & DUNN LLP

s/ Sanja Muranovic
M. Christie Helmer, OSB No. 743400
chris.helmer@millernash.com
John F. Neupert, P.C., OSB No. 783168
john.neupert@millernash.com
Sanja Muranovic, OSB No. 171774
sanja.muranovic@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

Attorneys for Defendant Dutch Tecsource B.V.

Page 16 -   Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings

4831-5903-2907.5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings on:

> Mr. Jeffrey M. Edelson
> Mr. Dallas DeLuca
> MARKOWITZ HERBOLD PC
> Suite 3000 Pacwest Center
> 1211 S.W. Fifth Avenue
> Portland, Oregon  97204
> Fax:  (503) 323-9105
> E-mail:  jeffedelson@markowitzherbold.com
> E-mail:  dallasdeluca@markowitzherbold.com
>
> Attorney for Plaintiff Meduri Farms, Inc.

by the following indicated method or methods on the date set forth below:

- [x] **CM/ECF system transmission.**

- [x] **E-mail.**  (Courtesy copy.)

- [ ] **E-mail.**  As required by Local Rule 5-11, any interrogatories, requests for production, or requests for admission were e-mailed in Word or WordPerfect format, not in PDF, unless otherwise agreed to by the parties.

- [ ] **First-class mail, postage prepaid.**

- [ ] **Hand-delivery.**

- [ ] **Overnight courier, delivery prepaid.**

DATED:  July 21, 2017.

                                                     s/ Sanja Muranovic
                                                   Sanja Muranovic, OSB No. 171774
                                                   sanja.muranovic@millernash.com

                                                   Of Attorneys for Defendant Dutch Tecsource B.V.

Page 1 -    Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204