**Jeffrey M. Edelson, OSB No. 880407**
JeffEdelson@MarkowitzHerbold.com
**Dallas S. DeLuca, OSB NO. 072992**
DallasDeLuca@MarkowitzHerbold.com
Markowitz Herbold PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR  97204-3730
Tele:  (503) 295-3085
Fax:  (503) 323-9105

    Of Attorneys for Plaintiff

+IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MEDURI FARMS, INC., an Oregon corporation,<br><br>                                 Plaintiff,<br><br>     v.<br><br>DUTCHTECSOURCE B.V.,<br><br>                                Defendant. | **Case No. 3:17-cv-00906-SI**<br><br>**PLAINTIFF MEDURI FARMS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO REFER PARTIES TO ARBITRATION AND STAY PROCEEDINGS** |

      Meduri Farms, Inc., ("Meduri") cannot be compelled into arbitration because it never agreed to a contract with an arbitration clause.  Meduri agreed to the purchase and sale of *one* of the DutchTechSource B.V. ("DTS") systems on DTS's September 16, 2015, quotation.  That September 16 quotation did not contain any reference to Orgalime conditions.  The parties never agreed to the earlier August 24, 2015, quotation from DTS for *two* systems and, instead, in the ensuing weeks negotiated a new deal for just *one* system.  Under the United Nations Convention on Contracts for the International Sale of Goods ("UN CISG" or "UN Convention"), which applies here because this is a contract for the sale of goods between two signatory countries, a change in the quantity of the goods is a material change and "is a rejection of the offer . . . ."  UN

**Page 1 -**    **PLAINTIFF MEDURI FARMS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO REFER PARTIES TO ARBITRATION AND STAY PROCEEDINGS**

CISG Art. 19. DTS is not permitted to materially change the terms of the September 16, 2015, agreement by adding damage limitations, choice of law, and arbitration provisions after-the-fact in subsequent quotations for other equipment. *See Chateau des Charmes Wines, Ltd. v. Sabate USA Inc.*, 328 F.3d 528, 531 (9th Cir. 2003) (per curiam) (holding that forum selection clause in invoices issued subsequent to original contract were not binding because under the UN Convention it was a material modification). Because the parties did not form a contract based on the August 24 quotation with the Orgalime conditions, a fact confirmed by both parties' subsequent conduct, the parties did not agree to arbitrate this dispute or apply Orgalime conditions, and this Court should deny the motion to refer this dispute to arbitration.

## CONTRACT HISTORY

Meduri had never done business with DTS before negotiating a contract with DTS in 2015. (Decl. of D. Meduri in Opp'n to DTS's Mot. to Refer to Arbitration "Meduri Decl." ¶ 4.) To meet growing demand for its dried blueberry product, Meduri was searching for a new production system to produce more dried blueberries per hour without sacrificing quality or the distinctive Meduri taste profile. (*Id.* ¶ 3.) Meduri had never before bought a fruit processing system from overseas; its existing system was homegrown. (*Id.* ¶ 5.) This Court has found that production method to be a trade secret. *Meduri Farms, Inc. v. Wash. Tart Cherry Prods., Inc.*, CV 07-1215-AS, ¶ 4 (D. Or. Jan. 9, 2008) (filed under seal) (order granting preliminary injunction).

An agent for DTS, Chisholm Machinery, introduced Meduri to DTS. (Meduri Decl. ¶ 6.) After visits to DTS's facility in The Netherlands and after discussions about Meduri's needs and the DTS systems, DTS sent "QUOTATION VF150293" to Meduri on July 15, 2015. (Meduri Decl. Ex. 1, letter from DTS to Meduri.) That quotation, for a system that can process 10,000 pounds per hour, did not refer to "Orgalime Conditions" and did not mention arbitration. (*Id.*)

On July 24, 2015, Meduri sent a letter of intent that it would purchase two complete systems, each processing 5000 pounds per hour, from DTS for infusing dried blueberries. (Meduri Decl. Ex. 2.) In that letter, Meduri stated that DTS must send a new quote to reflect

certain product specifications described in that letter that were not reflected in quotation VF150293.  (*Id.*)  That letter did not mention Orgalime or arbitration.

On August 24, 2015, DTS sent a six-page letter to Meduri, describing the system that DTS would build for Meduri to produce dried blueberries, acknowledging Meduri's specific needs, and attaching, among other documents, "quotation VF150332."  (Meduri Decl. Ex. 3 at 6 (stating Quotation VF150332 attached to that letter).)  Quotation VF150332 contained, among other things, payment terms and a price overview that listed the number of units of each piece of equipment that Meduri would need to buy for the proposed DTS system, payment terms, and a statement that "Orgalime Conditions are applicable"[1] at the end of the last, the 27th, page.  (*Id.* Ex. 4.)  Soon after DTS sent the August 24 quotation, DTS acknowledged that the parties had not reached an agreement based on quotation VF150332: on August 28, 2015, a day after a phone conference between them, DTS sent Meduri a letter concerning design of the system, and in that letter DTS stated "*If we come to an agreement* our senior engineer will visit you somewhere around the 23rd of September."  (*Id.* Ex. 5 at 2.)

The parties did not come to an agreement on quotation VF150332.  (*Id.* ¶¶ 10, 11.)  Meduri, based on further return-on-investment calculations, decided to purchase only one DTS system.  (*Id.* ¶¶ 10, 12.)  Reflecting that new quantity, on September 16, 2015, DTS sent quotation VF150355 with a price overview, to which the parties eventually agreed.  (Meduri Decl. ¶ 12; *id.* Ex. 6 (quotation VF150355).)  DTS agrees that Meduri confirmed quotation VF150355 for one unit and not the earlier VF150322 for two units.  (Dkt. 11, Wakker Decl. ¶ 7; Dkt. 11-4, Wakker Decl. Ex. D (Meduri confirmation email referring to VF150355).)

Quotation VF150355 did not mention Orgalime conditions.  (Meduri Decl. Ex. 6.)  It did not mention or incorporate the prior quotation.  (*Id.*)  It did not mention or incorporate Orgalime

---

[1] DTS did not specify *which* Orgalime conditions apply; the website for the organization that maintains Orgalime conditions provides eight different sets of conditions.  (Scott Decl. Ex. 1 (print-out of Orgalime webpage listing eight different sets of "General Conditions" available for use).)  Also, contrary to the recommendations on the Orgalime website, (Scott Decl. ¶ 5), DTS did not attach the conditions to the quotation.

Page 3 -   PLAINTIFF MEDURI FARMS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO REFER PARTIES TO ARBITRATION AND STAY PROCEEDINGS

conditions. (*Id.*) The parties never verbally discussed Orgalime conditions, nor did they ever discuss arbitration as a dispute resolution forum. (*Id.* ¶ 16.) Meduri then relied upon Quotation VF150355 to pay for the project. (*Id.* ¶ 12.)

DTS's statement on November 12, 2015, that it needed to "talk about the way we will set up a payment schedule" demonstrates that the quotation of September 16, Quotation VF150355, and the agreement between the parties did not incorporate Quotation VF150332 of August 24. (Meduri Decl. Ex. 7 at 2 (Nov. 12, 2015, email from DTS).) The August 24 quotation (which Meduri did not accept) included payment terms—a schedule of when Meduri would pay DTS. (*Id.* Ex. 4 at 27 (payment terms providing for four payments of 10%, 40%, 40%, and 10% at different trigger events).) The September 16 Quotation VF150355, however, did not include payment terms. (*Id.* Ex. 6.) The parties had discussed payment terms in September, but did not come to an agreement on payment terms. (*Id.* ¶ 13.) On November 12, DTS asked Meduri "to talk about the way we will setup a payment schedule[,]" (*id.* ex. 7 at 2) a question that would have been unnecessary if the September 16 quotation had incorporated the August 24 quotation or if the August 24 quotation (an offer) had been accepted by Meduri.

Subsequently, DTS sent invoices to Meduri for the equipment listed on the September 16, 2015, quotation. None of those invoices mentioned Orgalime conditions. (*Id.* Ex. 8.) None of Meduri's purchase orders for DTS equipment mentioned Orgalime. (*Id.* Ex. 9.)

Also, Meduri never agreed to modify the September 16, 2016, agreement to add Orgalime conditions to the deal. (*Id*. ¶ 15.) Prior to this litigation, the president of Meduri did not recall seeing the "Orgalime Conditions" words on Quotation VF150332, he did not know what the Orgalime conditions included, he would not have agreed to forego Meduri's right to a jury trial in Oregon under Oregon law, and would not have agreed to limit Meduri's damages to just 15 percent of the purchase price, as the seller-friendly Orgalime conditions purport to do. (Meduri Decl. ¶¶ 16, 18; *see* Ex. B. to Wakker Decl., Dkt. 11-2 at 7 & 8 (Orgalime sections 69 & 77 (purporting to limit damages to 15% of purchase price even if product completely fails, and

Page 4 -   PLAINTIFF MEDURI FARMS, INC.'S OPPOSITION TO DEFENDANT'S
           MOTION TO REFER PARTIES TO ARBITRATION AND STAY
           PROCEEDINGS

eliminating consequential damages); sections 78-79 (arbitration under the law of the seller's country).)

**ARGUMENT**

**I.      This Court determines whether a contract with an arbitration clause even exists.**

The Oregon Supreme Court concisely summarized federal law on the requirements that must exist before a court is allowed to compel parties into arbitration and deprive a party of its constitutional right to a jury trial. Courts may compel arbitration only when the parties have agreed to arbitrate a given dispute.

> Arbitration under the FAA is based on contract. "[A] party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." Accordingly, before a court may compel arbitration under the FAA, it must determine (1) whether the parties are bound by a valid arbitration *agreement*; and (2) if so, whether the particular type of controversy between the parties is within the scope of that agreement.

*Industra/Matrix Joint Venture v. Pope & Talbot, Inc.*, 341 Or. 321, 331 (2006) (Balmer, J.) (citations omitted) (emphasis added). As DTS notes, courts apply a similar analysis to determine whether to enforce an arbitration agreement under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.* ("New York Convention"), by examining four factors:

> These four require that (1) there is an *agreement* in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Balen v. Holland America Line Inc.*, 583 F.3d 647, 654-55 (9th Cir. 2009) (quoting *Bautista v. Star Cruises*, 369 F.3d 1289, 1294-95 (11th Cir. 2005) (emphasis added). Both inquiries depend on a threshold question: whether the parties reached an agreement to arbitrate.

This Court determines the first question: does a contract with an agreement to arbitrate even exist. DTS's arguments concerning whether the parties agreed that the arbitrator determine

Page 5 -   PLAINTIFF MEDURI FARMS, INC.'S OPPOSITION TO DEFENDANT'S
            MOTION TO REFER PARTIES TO ARBITRATION AND STAY
            PROCEEDINGS

gateway issues of arbitrability miss the antecedent question—the question whether a contract with an arbitration clause even exists. Where "the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (emphasis in original). The United States Supreme Court noted that "[t]he issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006). Citing *Buckeye*, the Ninth Circuit concluded that "[i]ssues regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, but challenges to the *existence* of a contract as a whole must be determined by the court prior to ordering arbitration." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) (emphasis in original).

Citing *Sanford*, a district court stated that "arguments that deny the very *existence* of a contract . . . are . . . unfit for arbitral resolution because it is 'virtually impossible' to conceive how a party advancing such an argument could be said to have agreed to arbitrate the question of the arbitrator's jurisdiction. For this reason, a fundamental dispute regarding contract formation is presumptively for judicial resolution, absent other compelling reasons to allow the arbitrator to consider such a challenge." *Freaner v. Valle*, 966 F.Supp.2d 1068, 1079 (S.D. Cal. 2013) (citations omitted; emphasis in original). And that court noted, "[i]t would be unfair to compel Defendants to arbitrate a dispute over mutual assent to the contract because the implication of their argument is that they never agreed to arbitrate any issues at all." *Id.* at 1080.

The conclusions in *Sanford* and *Freaner* do not change simply because the purported arbitration clause mentions the American Arbitration Association ("AAA") rules (or any other rules). In *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014), the court determined that the plaintiff was not bound by an arbitration agreement that called for AAA arbitration because he had not assented to the arbitration agreement. *Id.* at 1174 (quoting clause with AAA rules). Regardless of the AAA rules clause, the *court* decided the threshold gateway issue of contract formation, *i.e.* whether Nguyen had assented to the Terms of Use contract with the

Page 6 -    PLAINTIFF MEDURI FARMS, INC.'S OPPOSITION TO DEFENDANT'S
            MOTION TO REFER PARTIES TO ARBITRATION AND STAY
            PROCEEDINGS

arbitration provision. *Id.* at 1179 (holding that there was no assent to the Terms of Use and hence no binding contract with an arbitration clause). *See also Martin v. Yasuda*, 829 F.3d 1118, 1120, 1124 (9th Cir. 2016) (the court, not an arbitrator, determines whether a party has waived right to compel arbitration due to litigation conduct even where the arbitration clause provided for AAA rules).

DTS's argument that the ICC should determine whether there is an agreement to arbitrate is without support. DTS's reliance on *Portland General Electric Co. v. Liberty Mutual Ins. Co.* is misplaced. That case does not address whether an agreement to arbitrate existed, only the scope of that arbitration clause. 862 F.3d 981, 985 (9th Cir. 2017) ("PGE does not dispute the validity of the arbitration clause in the Guaranty, but rather only its scope[.]"). Similarly, *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013), is inapposite. In that case, there was no dispute that there was a signed contract with an arbitration clause: Oracle admitted that contract existed when it filed a breach of contract claim along with three statutory claims. *Id.* at 1071. Myriad Group moved to compel arbitration of all claims, and the district court compelled arbitration of the contract claim but not the other claims. *Id.* at 1071-72. Neither party disputed that there was a valid contract with an arbitration clause; the question before the Ninth Circuit was whether the court or the arbitrator would determine whether the statutory claims fell within the scope of the arbitration clause. *Id.* at 1072 ("The only issue in this case is whether the parties agreed to arbitrate arbitrability."). That case is inapplicable here.

Similarly, the other cases that DTS cites are inapposite because in those cases it was undisputed that the parties had agreed to a contract with an arbitration clause. *See Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519-20 (1974) (existence of contract with arbitration clause not disputed); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 472–73 (1st Cir. 1989) ("undisputed" that the parties "entered into an agreement" that contained an arbitration clause); *Momot v. Mastro*, 652 F.3d 982, 983 (9th Cir. 2011) (undisputed that the parties "entered into an allocation agreement . . . that included an arbitration clause"); *Chiron Corp. v. Ortho Diagnostics Sys. Inc.*, 207 F.3d 1126, 1128 (9th Cir. 2000) ("We are not presented with a disagreement over

Page 7 -   PLAINTIFF MEDURI FARMS, INC.'S OPPOSITION TO DEFENDANT'S
          MOTION TO REFER PARTIES TO ARBITRATION AND STAY
          PROCEEDINGS

whether the parties agreed to arbitrate. They clearly did[.]"); *Wal-Mart Stores, Inc. v. PT Multipolar Corp.*, 202 F.3d 280 (9th Cir. 1999) (the parties disputed who decided arbitrability; they did not dispute existence of contract with a valid arbitration clause); *Silec Cable S.A.S. v. Alcoa Fjardaal, SF*, CIV. 12-01392, 2012 WL 5906535 at *15 (W.D. Pa. Nov. 26, 2012); ("The parties do not dispute that the arbitration provision in the Purchase Order falls within the Convention and the FAA.").

   DTS did cite three cases where the parties did dispute the existence of a contract with an arbitration clause, and those cases undermine DTS's position.  In *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), the Kaplans had not signed a contract with an agreement to arbitrate, and the Court concluded that a court, not an arbitrator, should determine if they had agreed to arbitrate.  *Id.* at 947.  In *Balen v. Holland America Line Inc.*, 583 F.3d 647, 653-54 (9th Cir. 2009), Balen admitted he signed the contract with the arbitration clause but argued it was void based on statutory and unconscionability arguments.  The court, not an arbitrator, decided those issues.  *Id.*  In *Boardman v. Pacific Seafood Group*, 822 F.3d 1011 (9th Cir. 2016), the court did not resolve the question whether the contract had been formed and instead the court determined the scope of an arbitration agreement.  *Id.* at 1019 ("Regardless of whether the provision constitutes a valid agreement to arbitrate, Plaintiffs' claims are not within the scope of Paragraph 3(a)").

   Here, DTS contends that the parties agreed to a contract, the August 24 quotation; the August 24 quotation provides for "Orgalime Conditions" which DTS now contends means the SI 14 Orgalime Conditions which contains an arbitration clause.  Meduri disputes the existence of that contract or of any contract with the August 24 quotation.  This Court, not the arbitrator, determines the question of contract formation, *i.e.* whether Meduri rejected the offer of the August 24 quotation and therefore no contract was formed with the August 24 quotation.

///

///

///

Page 8 -  PLAINTIFF MEDURI FARMS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO REFER PARTIES TO ARBITRATION AND STAY PROCEEDINGS

## II. Meduri rejected the quotation that included Orgalime conditions when Meduri requested different quantities of product.

### A. The UN Convention applies to determine contract formation because the parties are from different countries and the contract is for the sale of goods internationally.

DTS argues that Oregon's substantive contract law governs whether these parties reached an agreement regarding whether to submit any dispute to arbitration. (Dkt. 10, DTS Mem. at 8-11.) DTS is wrong. Instead, the UN Convention applies to determine whether the parties are bound by a valid arbitration agreement. The UN Convention applies to "contracts of sale of goods between parties whose places of business are in different States ... when the States are Contracting States." UN CISG Art. 1(1)(a). Both the United States and The Netherlands are contracting states to the UN CISG, and the parties' agreement was for the sale of goods. (Meduri Decl. Ex. 8 at 1 (first invoice listing items).) The Ninth Circuit explained that "there is no doubt that the [UN] Convention is valid and binding federal law" that "governs the substantive question of contract formation" even for a contract with an arbitration clause. *Chateau des Charmes Wines Ltd. v. Sabate USA Inc.*, 328 F.3d 528, 530 (9th Cir. 2003) (per curiam); *see also Filanto, S.p.A. v. Chilewich Intern. Corp.*, 789 F. Supp. 1229, 1237 (S.D.N.Y. 1992) (interpreting "agreement in writing" requirement of the New York Convention regarding international arbitration agreements "in light of, and with reference to, the substantive international law of contracts embodied in the [UN] Sale of Goods Convention").

The New York Convention applies here, as incorporated by chapter two of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq*. The analysis under the New York Convention to determine whether there is an agreement to arbitrate is the four-factor inquiry that DTS recites. (Dkt. #10, DTS Mem. at 12-13.) The first part of the inquiry, and the one relevant to this motion, is as follows: "'1) Is there an agreement in writing to arbitrate the subject of the dispute. [NY] Convention, Articles II(1), II(2)[.]'" *Filanto*, 789 F.Supp. at 1236 (citation omitted).

The question in *Filanto*, just like the question here, is whether there is an agreement to arbitrate. *Id.* at 1237 ("The central disputed issue, therefore, is whether the correspondence

Page 9 -   PLAINTIFF MEDURI FARMS, INC.'S OPPOSITION TO DEFENDANT'S
            MOTION TO REFER PARTIES TO ARBITRATION AND STAY
            PROCEEDINGS

between the parties . . . constitutes an 'agreement in writing.'"). To answer that question, courts do not look to state contract law but, instead, to the UN Convention. *Id.* at 1237 ("the 'federal law of contracts' to be applied in this case is found in the United Nations Convention on Contracts for the International Sale of Goods[.]"). Where the New York Convention applies, the UN Convention also applies, if the parties are from signatory countries and if the contract is for the international sale of goods.[2] *Id.*; *see also Chateau des Charmes Wines*, 328 F.3d at 530 (UN Convention, not California law, applied to interpret a contract for the sale of goods from a California company to a Canadian company).

### B. Meduri rejected the August 24 offer when it negotiated new quantities as memorialized in the September 16 quotation.

Article 19(3) of the UN Convention provides that a change in quantity is a material term. Section 19(1) provides that, in response to an offer, any change to a material term is a rejection and a counteroffer. "Article 19[3] defaults to the old common-law 'mirror image' rule: 'A reply to an offer which purports to be an acceptance but contains additions, limitations or other

---

[2] DTS cites *Century Indemnity Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513 (3d Cir. 2009), and *Brown v. BYRV, Inc.*, 3:14–cv–01213–AC, 2015 WL 4507159 (D. Or. July 24, 2015), for the proposition that state-law contract principles apply. *Century* is inapposite because it did not concern the sale of goods, and *Brown* is inapposite because the parties are not foreign.

[3] Article 19 provides as follows:

(1) A reply to an offer which purports to be an acceptance but contains additions, limitations or other modifications is a rejection of the offer and constitutes a counter-offer.

(2) However, a reply to an offer which purports to be an acceptance but contains additional or different terms which do not materially alter the terms of the offer constitutes an acceptance, unless the offeror, without undue delay, objects orally to the discrepancy or dispatches a notice to that effect. If he does not so object, the terms of the contract are the terms of the offer with the modifications contained in the acceptance.

(3) Additional or different terms relating, among other things, to the price, payment, quality and quantity of the goods, place and time of delivery, extent of one party's liability to the other or the settlement of disputes are considered to alter the terms of the offer materially.

The full text of the UN Convention is available here: https://treaties.un.org/doc/Publication/UNTS/Volume%201489/volume-1489-I-25567-English.pdf

Page 10 -  PLAINTIFF MEDURI FARMS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO REFER PARTIES TO ARBITRATION AND STAY PROCEEDINGS

modifications is a rejection of the offer and constitutes a counter-offer.'" *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 748 F.3d 780, 786 (7th Cir. 2014).

DTS admits that Meduri changed the quantity from the August 24 quotation. "On August 24, 2015, . . . DTS sent Meduri a . . . Quotation for *two* infusion lines." (Wakker Decl. ¶ 4 (emphasis added).) "On September 16, 2015, . . . DTS sent Meduri a two-page 'Price Overview' quoting the price for *only one* infusion line." (*Id.* ¶ 6.) The August 24 quotation VF150332 also provided a "Price Overview" with quantities for numerous pieces of equipment for two separate DTS systems, each purportedly able to process 5000 pounds of dried blueberries per hour. By September 16, the parties agreed to just one DTS system and to a reduced quantity of equipment, cutting the orders for most of the equipment in half. (Meduri Decl. Ex. 6.) That September 16, 2015, quotation, VF150355, did not include Orgalime conditions. (*Id.*)

The two quotations were different in material terms under Article 19(3). Article 19(3) provides that "different terms related . . . to the . . . quantity of the goods . . . are considered to alter the terms of the offer materially." The September 16 quantity change is therefore "a rejection of the offer[,]" Article 19(1), and negates the August 24 quotation.

And, as plaintiff admits, Meduri accepted the September 16 quotation, VF150355, not the August 24 quotation, VF150332. Justin Wakker, the "person in charge" of DTS (Dkt. 11 at 2, Wakker Decl. ¶ 1), stated that "On September 19, 2015, Meduri confirmed its order for a *single* infusion line based on the pricing provided to it by DTS. A true and correct copy of an email from Dominic Meduri to me confirming the order is attached as Exhibit D." (*Id.* ¶ 7 (emphasis added).) Exhibit D to the Wakker Declaration is an email from Meduri to DTS that references, in the subject line of the email, "VF150355[.]" (Dkt. 11-4.)

Also, the parties never acted as if Orgalime conditions applied to the relationship. Meduri never adopted or acted as if the Orgalime conditions applied. Contrary to the Orgalime conditions, Meduri filed in Oregon state court under Oregon law. Contrary to Orgalime's provision that a buyer's damages are limited to 15 percent of the purchase price, Meduri prior to filing the lawsuit demanded a full refund of the amount it paid, plus consequential damages.

Page 11 -  PLAINTIFF MEDURI FARMS, INC.'S OPPOSITION TO DEFENDANT'S
           MOTION TO REFER PARTIES TO ARBITRATION AND STAY
           PROCEEDINGS

DTS also did not act as if Orgalime conditions applied. Of the total of nine invoices that DTS sent, none of them referred to Orgalime. (Meduri Decl. Ex. 8.) Further, of the three different quotations for the infusion project that DTS sent, only one, VF150332, mentions Orgalime. VF150293 of July 2015 and VF150355 of September 2015 do not mention Orgalime conditions. (*Id.* Exs. 1 and 6.) And, as described above, in November 2015, DTS asked what the payment terms would be, (*id.* ex. 7 at 2), indicating that even DTS did not believe that the August 24 quotation (which contained payment terms) applied to the parties' agreement.

There is a separate and additional reason to conclude that the August 24 quotation is not a writing that binds Meduri to an arbitration clause: Meduri never signed the August 24 quotation, and did not itself exchange that quotation in a letter to DTS. Under the New York Convention, to be binding on the parties the purported arbitration agreement must be an "agreement in writing[,]" and the New York Convention "define[s] [that] to include 'an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.' New York Convention art. II, § 2." *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 186 F.3d 210, 214 (2d Cir.1999), *abrogated in part on other grounds by Sarhank Group v. Oracle Corp.*, 404 F.3d 657, 660 n. 2 (2d Cir. 2005). The Second Circuit examined that definition in depth, *id.* at 215-18, and held that an arbitration clause contained in a purchase order sent by one party, but not signed by the party that received and fulfilled the purchase order, was not binding on the recipient of the purchase order. *Id.* at 218.

> As noted above, the Arbitration Clauses were contained in the Purchase Orders which were signed only by Kahn Lucas, and not by Lark. There is therefore no "arbitral clause in a contract ... signed by the parties." Further, Kahn Lucas does not contend that the Purchase Orders, even together with Lark's Confirmation of Order forms, represent "an arbitral clause in a contract ... contained in an exchange of letters or telegrams." As a result, there is no "agreement in writing" sufficient to bring this dispute within the scope of the Convention.

*Id.* The New York Convention, like the UN Convention, has a high bar to hurdle before a court can conclude that a purported arbitration clause is binding on both parties. Here, like in *Kahn Lucas*, Meduri never signed the August 24 quotation, VF150332, with the words "Orgalime

Page 12 -  PLAINTIFF MEDURI FARMS, INC.'S OPPOSITION TO DEFENDANT'S
           MOTION TO REFER PARTIES TO ARBITRATION AND STAY
           PROCEEDINGS

Conditions" and there is no evidence that Meduri Farms ever sent a letter (or email) to DTS agreeing to VF150332.  Under the New York Convention, there is no agreement in writing.

The facts show that the parties never agreed to Orgalime conditions, and they never acted as if they did.  Under both the UN Convention and the New York Convention, there is no agreement in writing to arbitrate.

### III. The three follow-on orders for auxiliary parts, after contract formation, that state that "Orgalime Conditions are applicable" cannot alter the September 16, 2015, quotation.

Under the UN Convention, the contract is formed once the parties agree to the terms.  *See Chateau des Charmes Wines*, 328 F.3d at 531 ("'A contract is concluded at the moment when an acceptance of an offer becomes effective.'") (citation omitted).  Here, as DTS admits, the parties agreed to Quotation VF150355 in September 2015.  (Wakker Decl. ¶ 7.)

Parties cannot unilaterally change material terms of the contract after-the-fact.  Provisions concerning "settlement of disputes" are material terms.  UN CISG Art. 19(3).  Material changes must be agreed to by both parties.  UN CISG Art. 29(1); *also Chateau des Charmes Wines*, 328 F.3d at 531.  Contrary to the restrictions in Article 29, DTS states that it is entitled to arbitrate a dispute over the entire project because it mentioned Orgalime conditions in follow-on orders for different equipment after the contract was formed.  "DTS also included Orgalime conditions in its *follow-on agreements* for Meduri's purchase of the *auxiliary parts*[.]"  (Dkt. 11, Wakker Decl. ¶ 13 (emphases added).)  Those invoices for "follow-on agreements" were for orders for equipment separate from the equipment on the September 16, 2015, quotation, and are for relatively small dollar amounts.  (Dkt. 11-6, Wakker Decl. Ex. F at 54 (€58,000); *id.* at 64 (€525); *id.* at 87 (€300).)

The three orders for auxiliary parts from DTS after September 2015 that reference Orgalime conditions cannot add a material term such as arbitration to the original September 2015 contract.  In *Chateau des Charmes Wines*, the parties agreed to the sale of corks, and the agreement lacked a forum selection clause.  328 F.3d at 529.  Later, the seller included a forum selection clause with its invoices.  The purchaser never objected to those clauses in the invoices.

Page 13 -   PLAINTIFF MEDURI FARMS, INC.'S OPPOSITION TO DEFENDANT'S
            MOTION TO REFER PARTIES TO ARBITRATION AND STAY
            PROCEEDINGS

*Id.* at 531.  But, under the UN Convention, the purchaser did not need to object to new material terms in order to avoid their operation.  "We reject the contention that because Sabaté France sent multiple invoices it created an agreement as to the proper forum with Chateau des Charmes.  The parties agreed in two telephone calls to a purchase of corks to be shipped in eleven batches.  In such circumstances, a party's multiple attempts to alter an agreement unilaterally do not so effect."  *Id.* at 531.

Here, as in *Chateau des Charmes Wines*, DTS's order confirmations for auxiliary parts subsequent to contract formation in September 2015 do not change the original agreement.  That original agreement did not include Orgalime conditions.  There is no agreement to arbitrate.

## CONCLUSION

The Court should deny DTS's motion because Meduri never agreed to a contract that included Orgalime conditions.  Meduri rejected the August 24, 2015, quotation that mentioned "Orgalime Conditions" when Meduri, as DTS admits, asked for a new quote for a different quantity of goods.  Under the UN Convention, a demand for different quantity is a rejection of the original offer.  Meduri rejected the August 24 quotation and instead agreed to a contract based on the September 16 quotation which does not mention Orgalime conditions.  Additionally, Meduri never signed the August 24 quotation, as required by the New York Convention.  There is no agreement to arbitrate.

DATED this 16th day of August, 2017.

MARKOWITZ HERBOLD PC

By:  */s/ Dallas DeLuca*
Jeffrey M. Edelson, OSB #88040
Dallas S. DeLuca, OSB #072992
(503) 295-3085
Of Attorneys for Plaintiff

643336

**Page 14 -  PLAINTIFF MEDURI FARMS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO REFER PARTIES TO ARBITRATION AND STAY PROCEEDINGS**