**M. Christie Helmer**, OSB No. 743400
chris.helmer@millernash.com
**John F. Neupert**, P.C., OSB No. 783168
john.neupert@millernash.com
**Sanja Muranovic**, OSB No. 171774
sanja.muranovic@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

Attorneys for Defendant Dutch TecSource B.V.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| MEDURI FARMS, INC., an Oregon corporation,<br><br>                    Plaintiff,<br><br>     v.<br><br>DUTCHTECSOURCE B.V.,<br><br>                    Defendant. | Case No. 3:17-cv-00906-SI<br><br>DEFENDANT'S REPLY IN SUPPORT OF MOTION TO REFER PARTIES TO ARBITRATION AND STAY PROCEEDINGS<br><br>**ORAL ARGUMENT REQUESTED** |

### I.    INTRODUCTION

To avoid arbitration, Meduri Farms, Inc. ("Meduri") claims it never agreed to arbitrate with Dutch TecSource B.V. ("DTS"). But under binding United States Supreme Court authority and a recent decision from the Ninth Circuit, this very question—whether DTS and

Page 1 -   Defendant's Reply in Support of Motion to Refer Parties to Arbitration and Stay Proceedings

4845-5781-3325.10

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Meduri even agreed to arbitrate—should be referred to arbitral resolution.  The law is clear: gateway questions of arbitration agreement formation should be decided by the arbitrator(s) when there is clear and unmistakable evidence of party intent to that effect.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); *Portland General Electric Co. v. Liberty Mutual Ins. Co.*, *et al.*, 862 F.3d 981, 985 (9th Cir. 2017) (*"PGE"*).

Here, the court has clear and unmistakable evidence of DTS's and Meduri's intent.  The August 24, 2015 Quotation ("August Quotation") from DTS to Meduri expressly provides in bold and italicized font that "***Orgalime Conditions are applicable***."  Orgalime Conditions are "common in the commercial context" and "serve as a foundational 'set of general conditions for the supply of products, which could be used worldwide.'"  *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 421 (5th Cir. 2014).  Among other commonly used terms and conditions, the Orgalime Conditions include an arbitration clause:  "all disputes arising out of or in connection with [an agreement] shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce."  Declaration of Justin Wakker in Support of Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings, ¶ 4 ("Wakker Decl.") (Dkt. 11).

The ICC's Rules of Arbitration in turn expressly delegate to the arbitrator the authority to determine its own jurisdiction and "the *existence*, validity or scope of the arbitration agreement."  ICC Rules, Article 6(3) (emphasis added).  For this reason, the August Quotation is clear and unmistakable evidence of DTS's and Meduri's intent to delegate issues of arbitrability to an ICC arbitrator.  *PGE*, 862 F.3d at 985 (evidence of this intent is clear and unmistakable

Page 2 -   Defendant's Reply in Support of Motion to Refer Parties to Arbitration and Stay Proceedings

4845-5781-3325.10

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

when the parties' agreement incorporates the ICC Rules of Arbitration). Whether DTS and Meduri agreed to arbitrate is a question for the arbitrator(s).

But, Meduri now denies the August Quotation is part of the parties' sales agreement. For several reasons, the denial amounts to nothing more than an attempt to repudiate what Meduri already admitted in its First Amended Complaint. *See* Plaintiff's First Amended Complaint at ¶¶ 13-15 (Dkt. 1-2) ("FAC") (e.g. "Further, in defendant's quotation of August 24, 2015, for DTS to sell to Meduri Farms a dried blueberry processing system, DTS stated …"). FAC ¶ 15. In paragraph 42 of the FAC, Meduri alleges as "breach of contract" that "Defendant's product, the DTS System, did not maintain quality or taste, did not process 5,000 pounds of frozen blueberries per hour without significantly damaging the fruit, and did not achieve the required yields or anything close to the required yields." Meduri alleges these statements were made by the August Quotation. FAC ¶ 13.[1] To now deny the August Quotation is part of the parties' agreement impermissibly contradicts the First Amended Complaint. *Filanto, S.p.A. v. Chilewich Intern. Corp.*, 789 F. Supp. 1229, 1240 (S.D.N.Y. 1992) (plaintiffs cannot have it both ways by suing on a written instrument and then repudiating it after defendant points out that it contains an arbitration clause).

That Meduri regarded the August Quotation as part of the parties' agreement is confirmed by the fact that it accepted the initial payment term set forth in the August Quotation ("10% upon order"). Only the August Quotation provided for payment terms. Wakker Decl., Ex. A at 33. Meduri accepted the initial payment term using its precise words. Wakker Decl.,

---

[1] "On August 24, 2015, DTS sent Meduri Farms 'our quotation' for the fruit processing system. Defendant's quotation provided that each unit of the system would have the capacity to process 5,000 pounds of frozen blueberries per hour while maintaining the Meduri Farms' taste profile and standard of quality and yield." FAC ¶ 13.

Page 3 -   Defendant's Reply in Support of Motion to Refer Parties to Arbitration and Stay Proceedings

4845-5781-3325.10

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Ex. D ("I want to get the 10% deposit upon order to you early next week."). And Meduri made its initial payment to DTS in accordance with that payment term. Wakker Decl., ¶ 8. In addition, the payment terms Meduri accepted appear immediately above the statement in bold and italicized font that "*Orgalime Conditions are applicable*." Wakker Decl., Ex. A at 33. Thus, Meduri's subsequent performance supports the conclusion that Meduri understood the August Quotation to be part of the agreement it made with DTS. *See, e.g.*, *Momot v. Mastro*, 652 F.3d. 982, 988 (9th Cir. 2011) (course of conduct may demonstrate assent to agreement that provides for arbitration).

In addition to this clear and unmistakable evidence of an agreement to arbitrate, the substance of the August Quotation itself proves the document is inextricably part of the parties' agreement. This 33-page document spells out all the product details and technical information that provide the specifics for the two blueberry infusion lines to be sold to Meduri. Supplemental Declaration of Justin Wakker in Support of Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings ("Supplemental Wakker Decl."), ¶ 2. Without it, Meduri would not have known what it was purchasing from DTS. Supplemental Wakker Decl., ¶ 2. But Meduri claims it "rejected" the August Quotation because it ultimately purchased only one infusion line, as reflected in what Meduri refers to as the September 16, 2015 "quotation." The September 16 document is one page entitled "Price Overview" that merely divides by two the price originally quoted in the August Quotation, reflecting the purchase price of one infusion line instead of two. Supplemental Wakker Decl., ¶ 3. It simply replaces the "price overview" at page 32 of the August Quotation. *Id.*; Wakker Decl., Ex. A at 32. It does not alter any other terms in the August Quotation; it does not provide a new payment schedule; it does not provide

Page 4 -   Defendant's Reply in Support of Motion to Refer Parties to Arbitration and Stay
           Proceedings

4845-5781-3325.10

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

any product details; and the equipment and Euro amounts listed in it tie directly to the August Quotation.  It would therefore be wrong to treat the September 16 Price Overview as disconnected from the August Quotation.   Together, the documents describe the terms of Meduri's purchase of a single infusion line.  And, as pointed out above, Meduri is suing on statements made in the August Quotation.

But the court need not even determine whether DTS's and Meduri's agreement includes the August Quotation.  The August Quotation is clear and unmistakable evidence of the parties' intent to delegate gateway issues, including the issue of arbitration agreement formation, to the ICC arbitrator(s) for resolution.  For this reason, it is, instead, the ICC arbitral Tribunal who should decide whether DTS and Meduri agreed to arbitrate.

## II.    ARGUMENT

### A.    The court must first determine *who*–the court or the arbitration Tribunal– should decide whether DTS and Meduri agreed to arbitrate.

Meduri's Opposition to Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings ("Meduri Op.") (Dkt. 20) turns on a single, but critical, assumption:  that DTS, in seeking to refer the parties to arbitration, overlooked "the antecedent question—the question whether a contract with an arbitration clause even exists."  Meduri Op. at 6.  DTS did *not* overlook this question, and adopting this assumption would be a mistake for several reasons. The first paragraph of the Memorandum of Law portion of DTS's Motion to Refer Parties to Arbitration and Stay Proceedings ("DTS Motion") (Dkt. 10) posits that "whether an agreement to arbitrate even exists" is a "gateway issue" to arbitration, and the Memorandum goes on to address that issue throughout DTS's Motion.  DTS Motion at 5-6, 8-11.

Page 5 -    Defendant's Reply in Support of Motion to Refer Parties to Arbitration and Stay Proceedings

4845-5781-3325.10

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

That arbitration agreement formation is a "gateway issue" to arbitration is indisputable. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (whether parties are bound by a given arbitration clause is a gateway dispute and a question of arbitrability); *First Options*, 514 U.S. at 944 (whether parties agreed to arbitrate is a question of arbitrability); *PGE*, 862 F.3d at 985 (whether parties are bound by a given arbitration clause is a gateway question of arbitrability).

But although it is a gateway issue, arbitration agreement formation is not, as Meduri dubs it, "the antecedent question." The true antecedent question is *who decides* whether the parties agreed to arbitration—the court or the arbitrator(s). This may sound like a "what comes first, the chicken or the egg?" conundrum, but it is not. There is only one answer: *who decides* whether an agreement to arbitrate exists must necessarily be answered before the question of contract formation is itself evaluated on the merits. *See PGE*, 862 F.3d at 985-86 (finding the court need not reach the merits of contract formation where it first determined the gateway issue of arbitrability is for the arbitrator); *see also Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 472-74 (1st Cir. 1989) (also finding the court need not reach the merits of contract formation where the evidence shows a *prima facie* agreement to arbitrate under ICC rules, making the issue of arbitrability an issue for the arbitrator).

The court must therefore begin its analysis by asking *who* should decide whether the parties agreed to arbitrate.

Page 6 -    Defendant's Reply in Support of Motion to Refer Parties to Arbitration and Stay Proceedings

4845-5781-3325.10

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

### B. Although arbitration agreement formation is presumptively for judicial resolution, that presumption is rebuttable.

DTS does not disagree with Meduri that the question of whether the parties agreed to arbitrate is presumptively, and indeed often, a question for judicial resolution. But this presumption is rebuttable. Both the Supreme Court of the United States and the Ninth Circuit have repeatedly found that gateway issues like contract formation are for arbitral—not judicial—resolution where there is "clear and unmistakable evidence" that parties intended to arbitrate those very issues. *First Options*, 514 U.S. at 939 ("courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so"); *PGE*, 862 F.3d at 985 ("parties may delegate the adjudication of gateway issues to the arbitrator if they 'clearly and unmistakably' agree to do so"); *Momot*, *supra*, 652 F.3d at 988 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 79, 130 S. Ct. 2772, 2783 (2010)) ("'[c]lear and unmistakable "evidence" of an agreement to arbitrate arbitrability might include … a course of conduct demonstrating assent … or … an express agreement to do so'").

The evidence need not be uncontroverted; that is not the standard. Nor does the court have to find that DTS and Meduri *actually and intentionally* agreed to delegate these issues to the arbitrator (that is, that they actually and intentionally agreed to the Orgalime Conditions). The law simply asks whether there is clear and unmistakable evidence of such an agreement. If there is, then the issue of whether the parties agreed to arbitrate is for arbitral resolution.

Page 7 -   Defendant's Reply in Support of Motion to Refer Parties to Arbitration and Stay Proceedings

4845-5781-3325.10

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

      **C.**      **The August Quotation is clear and unmistakable evidence that rebuts the presumption favoring judicial resolution of arbitrability.**

The court here has clear and unmistakable evidence that DTS and Meduri agreed to delegate the gateway question of arbitration agreement formation to resolution by the arbitral Tribunal. Specifically, the August Quotation, an inextricable part of the parties' agreement, explicitly states that "***Orgalime Conditions are applicable***."

The two circuit courts in the country that evaluated Orgalime Conditions (discussed in DTS's Motion and wholly ignored by Meduri) both found that incorporating them into an agreement reflects the parties' intent to arbitrate "all disputes arising out of or in connection with" the agreement in accordance with the ICC Rules of Arbitration. *Al Rushaid*, 757 F.3d at 419-21 (the Orgalime Conditions "serve as a foundational 'set of general conditions for the supply of products'" and incorporation of the Orgalime Conditions into an agreement reflects the parties' intent to arbitrate before the ICC); *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 443-48 (3d Cir. 2003) (the parties agreed to arbitrate by incorporating the Orgalime Conditions into their agreement even though one party never received a copy of or read the Orgalime Conditions).[2] Similarly then, by incorporating Orgalime Conditions into their agreement, DTS and Meduri intended that "All disputes arising out of or in connection with [their agreement] shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce." Wakker Decl., Ex. B at ¶ 78.

The Ninth Circuit consistently finds clear and unmistakable evidence of parties' intent to delegate gateway issues to the arbitrator when the parties provide for arbitration in

---

[2] Although both courts determined the existence of an agreement to arbitrate under ICC Rules, the question of delegation of the decision to the arbitrator(s) does not appear to be an issue in the cases and is thus not directly addressed by the courts.

Page 8 -   Defendant's Reply in Support of Motion to Refer Parties to Arbitration and Stay Proceedings

4845-5781-3325.10

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

conformance with a particular set of rules, like the ICC Rules of Arbitration, that delegate to the arbitrator the authority to decide its own jurisdiction. *PGE*, 862 F.3d at 985 (finding clear and unmistakable evidence of the parties' intent to arbitrate arbitrability because the parties' agreement incorporated ICC Rules of Arbitration); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1073 (9th Cir. 2013) (finding clear and unmistakable evidence of the parties' intent to arbitrate arbitrability because their agreement incorporated UNCITRAL rules); *Momot*, 652 F.3d at 986 (finding clear and unmistakable evidence of the parties' intent to arbitrate arbitrability where their agreement incorporated AAA rules).

Meduri claims reliance on *PGE* is "misplaced" because the "case does not address *whether* an agreement to arbitrate existed, only the *scope* of that arbitration clause." Meduri Op. at 7. At best, the statement is incomplete because "scope" included whether PGE was *bound to arbitrate at all* with persons with whom it had no agreement to arbitrate. In *PGE*, PGE agreed with Abengoa S.A. to arbitrate in accordance with ICC rules all disputes "in connection" with Abengoa's Guaranty to PGE. But PGE argued it had not agreed to arbitrate with certain insurance companies ("Sureties") who provided a performance bond ("Bond") because the Bond did not contain an arbitration clause. Therefore "PGE argues, a court must decide whether its dispute with the Sureties is subject to ICC arbitration." *PGE*, 862 F.3d at 985. The Ninth Circuit disagreed:

> "Whether Abengoa properly joined the Sureties to the arbitration pursuant to the Guaranty and the ICC Rules, whether the Sureties' claim against PGE meets the the Guaranty's test of 'aris[ing] out of or in connection with the agreement with a Subcontractor or [the] Guaranty,' *and whether PGE has therefore agreed* to arbitrate its dispute against the Sureties, are questions of the scope of the arbitration agreement in the Guaranty, delegated to the arbitrators." *PGE*, 862 F.3d at 985-86 (emphasis added).

Page 9 -   Defendant's Reply in Support of Motion to Refer Parties to Arbitration and Stay Proceedings

4845-5781-3325.10

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Of import here, the ICC Rules of Arbitration specifically "make[] clear that the arbitrators are vested with the authority to determine questions of arbitrability." *PGE*, 862 F.3d at 985 (describing Article 6(3) of ICC Rules of Arbitration).  This includes the authority to determine questions "concerning the *existence*, validity or scope of the arbitration agreement." ICC Rules Article 6(3) (emphasis added).  This is why clear and unmistakable evidence that the ICC Rules are incorporated into an agreement rebuts the presumption in favor of judicial resolution of gateway issues.

The August Quotation is an integral piece of the agreement between DTS and Meduri, and Meduri's claims against DTS are based on this very document.  Because the August Quotation incorporates the Orgalime Conditions and, therefore, the ICC Rules of Arbitration, there is "clear and unmistakable" evidence of the parties' intent to arbitrate gateway issues.  The court should, therefore, refer Meduri's claims in this matter to the ICC for arbitral resolution on the issue of arbitrability and, if found by the ICC to be arbitrable, on the merits.

**D.    If the court chooses to decide the gateway issue of arbitration agreement formation itself, it should find that DTS and Meduri agreed to arbitrate.**

If the court does not refer the gateway issue of arbitrability to the ICC, it should nonetheless find that Meduri and DTS agreed to arbitrate before the ICC and enforce that agreement under both the FAA and the New York Convention, codified at 9 U.S.C. § 1 *et seq.* and 9 U.S.C. § 201 *et seq.*, respectively.[3]

Meduri's basic argument against arbitration is that the August Quotation is not part of the parties' agreement because Meduri agreed to purchase only one infusion line instead

---

[3] Meduri does not dispute that, if there is an agreement to arbitrate, arbitration would be required under the FAA and the New York Convention.  For this reason, DTS will not repeat those arguments here.  Instead, DTS refers the court to pages 11-15 of the DTS Motion.

Page 10 -   Defendant's Reply in Support of Motion to Refer Parties to Arbitration and Stay Proceedings

4845-5781-3325.10

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

of the two lines described in detail in the August Quotation.  Meduri Op. at 10-11.  Meduri argues that, because there was a reduction in quantity, under the mirror-image rule incorporated in the United Nations Convention on Contracts for the International Sale of Goods ("CISG"), Meduri "rejected" the August Quotation and the Orgalime terms it incorporated.  *Id.*[4]

But Meduri does not dispute that, at its request, DTS provided the September 16, 2015 "Price Overview" to give the price for one infusion line, assuming the same equipment described in the more detailed August Quotation.  Wakker Decl., ¶ 6.  All the "Price Overview" did was divide the cost of the equipment in half based on reducing two lines to one.  Supplemental Wakker Decl., ¶ 3.  The August Quotation had a "price overview" portion totaling the price for two systems, and the September 16, 2015 "Price Overview" simply replaced that.  *Id.*; Wakker Decl., Ex. A at 32.  The Price Overview does not alter any of the other terms of the August Quotation, and it cannot be understood without reference to the August Quotation because only the August Quotation provides a description of the specific equipment being sold to Meduri.  *Id.*  Thus, the Price Overview is simply a reiteration (offer) of the August Quotation

---

[4] There is an apparent lack of consensus among federal courts on whether to apply state contract law or simply the CISG when determining whether parties to an international contract for the sale of goods agreed to arbitrate.  *See*, *e.g.*, *Al Rushaid*, 757 F.3d at 419 (applying Texas contract law to determine whether an international agreement for the sale of oil and gas drilling equipment sufficiently incorporated the Orgalime Conditions and therefore bound the parties to arbitrate before the ICC); *see also Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283 (3d Cir. 2017) (applying New Jersey contract law to determine whether a Canadian purchaser and a Californian seller of pistachios entered into an agreement to arbitrate); *but see Filanto*, 789 F. Supp. at 1235-38 (applying CISG to determine whether parties agreed to arbitrate, but also noting "there is as yet virtually no U.S. case law interpreting the [CISG]"); *cf. Cooperativa Agraria Indus. Naranjillo Ltda. v. Transmar Commodity Grp. Ltd.*, No. 16 Civ. 3356 (LLS), 2016 WL 5334984 (S.D.N.Y. 2016) (applying New York contract law to determine whether parties agreed to arbitrate even though one party argued the CISG should apply).  Essentially, it appears most courts look to state law to interpret the CISG's contract principles.

Page 11 -   Defendant's Reply in Support of Motion to Refer Parties to Arbitration and Stay Proceedings

4845-5781-3325.10

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

with the price cut in half.  That "offer" was accepted by Meduri, who sent DTS payment for the equipment in accordance with the August Quotation.

The "mirror-image" rule cited by Meduri does not create a rejection of the August Quotation under these circumstances if Meduri did not intend to be substituting the September 16, 2015 "Price Overview" for that August Quotation.  The evidence shows that it did not.  Also, Meduri's "mirror-image" argument does not accurately apply the CISG.  CISG Article 8(2) provides that the "conduct of a party [is] to be interpreted according to the understanding that a reasonable person of the same kind as the other party would have had in the same circumstances."  And, CISG Article 8(3) provides "[i]n determining the intent of a party or the understanding a reasonable person would have had, due consideration is to be given to *all relevant circumstances of the case* including the negotiations * * * and any *subsequent conduct* of the parties."  (Emphasis added.)  In other words, Article 8 embraces the same principle applicable under Oregon law—the objective theory of contracts.  DTS Motion at 9.  Applying CISG Article 8, DTS as a reasonable person would expect that, when Meduri responded to a detailed 33-page description of equipment for two infusion lines and then asked for the price of a single system, the other terms and conditions in the August Quotation were included in the Price Overview.

That Meduri regarded the August Quotation as part of the parties' agreement, and that DTS was justified in assuming that, is confirmed by additional facts.  Only the August Quotation provided for payment terms.  Wakker Decl., Ex. A at 33.  The initial payment term was "10% upon order" with the next installment "40% after approval of lay-out." *Id.*  Meduri clearly accepted the initial payment term (Wakker Decl., Ex. D ("I want to get the 10% deposit

Page 12 -   Defendant's Reply in Support of Motion to Refer Parties to Arbitration and Stay Proceedings

4845-5781-3325.10

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

upon order to you early next week."))  and made its initial payment to DTS in accordance with that payment term.  Wakker Decl., ¶ 8.  Later, as the time approached for the 40% payment installment specified in the August Quotation, Dominic Meduri wrote DTS stating:  "I was going over the quote and the next round of payments would be coming your way after approval of layout.  It would help us if we didn't have to pay the 40% all at once."  Declaration of Domenic Meduri in Support of Plaintiff Meduri Farms, Inc.'s Opposition to Defendant's Motion to Refer Parties to Arbitration and Stay Proceedings, Ex. 7 at 2.  ("Meduri Decl.") (Dkt. 21).  There were no payment terms in the September 16, 2015 Price Overview.  Wakker Decl., Ex. C.  And, the payment terms Meduri read and accepted appear immediately above the statement in bold and italicized font that "***Orgalime Conditions are applicable***."  Wakker Decl., Ex. A at 33.

In addition to these facts, subsequent conduct is also relevant under the CISG.  CISG Article 8(3).  Meduri's *subsequent conduct*, which can also be viewed as an admission, undeniably establishes that it understood the August Quotation to be an integral part of the parties' agreement.  As noted above, Meduri sued alleging breach of the promises said to be contained in the August Quotation.  In *Filanto*, *supra,* which Meduri itself cites, the Southern District of New York applied the CISG to find that the parties had indeed agreed to arbitrate.  *Id*.  To reach this finding, the court reasoned that, among other things, plaintiff put itself in an awkward position by having sued on a contract whose terms it must question in order to challenge the contract's arbitration clause.  *Filanto*, 789 F. Supp. at 1240-41.  "'[P]laintiffs cannot have it both ways. They cannot rely on the contract, when it works to their advantage, and repudiate it when it works to their disadvantage.'"  *Id*.  For this and other reasons, and "heeding

Page 13 -   Defendant's Reply in Support of Motion to Refer Parties to Arbitration and Stay
            Proceedings

4845-5781-3325.10

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

the presumption in favor of arbitration * * * which is even stronger in the context of international commercial transactions," the court decided that plaintiff agreed to arbitrate.

For this same reason, the Middle District of North Carolina recently reached the same conclusion. *Turfworthy, LLC v. Karl Wetekam & Co. KG*, 26 F. Supp. 3d 496, 504 (M.D.N.C. 2014). Applying the CISG, the court determined the parties' agreement incorporated by reference certain Terms and Conditions mentioned in the parties' order confirmations. *Id*. at 503. "Plaintiff's own Complaint shows that Plaintiff considered the order confirmations to be part of the parties' agreement regarding the transactions at issue." *Id*. at 504. Like *Filanto*, *Turfworthy* firmly stands for the proposition that a plaintiff who asserts contractual claims based on a given written document cannot later repudiate that same document and deny it is a part of its agreement with defendant.

Finally, Meduri contends the "parties never acted as if Orgalime conditions applied to the relationship." Meduri Op. at 11. That statement belies the facts. Meduri placed three further orders for auxiliary equipment for the infusion line under contract documents that reference Orgalime terms. Wakker Decl., Ex. F. Meduri does not claim that it ever objected to inclusion of those terms. Moreover, Dominic Meduri only avers that he does not "recall ever noticing any reference to Orgalime; and I would have assumed it was some sort of boilerplate Dutch or European organic cleanliness standard for food processing equipment." Meduri Decl., ¶ 18. That is a rather cavalier approach to purchasing millions of dollars in food processing equipment, let alone a disregard of the obligation to read relevant contract documents. *Franklin v. Western Pac. Ins. Co.*, 243 Or. 448, 452-53, 414 P.2d 343 (1966)) ("contracting parties have an obligation to read the contract and if they assent without so doing, they cannot come into

Page 14 -   Defendant's Reply in Support of Motion to Refer Parties to Arbitration and Stay Proceedings

4845-5781-3325.10

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

court later and successfully contend that their agreement was different."). It does not matter if Meduri failed to notice the August Quotation's reference to Orgalime Conditions or failed to understand what it meant. It should have, and it is bound by the provision it failed to read as a result.

      **E.**    **The agreement to arbitrate is contained in an exchange of documents and is thus enforceable.**

Meduri claims the August Quotation is not binding on it because it did not sign it "and did not itself exchange that quotation in a letter to DTS." Meduri Op at 12. Meduri relies on *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 186 F.3d 210 (2d Cir. 1999), *abrogated in part on other grounds*, *Sarhank Group v. Oracle Corp.*, 404 F.3d 657, 660 n.2 (2d Cir. 2005). *Kahn* holds that to be enforceable under the New York Convention, the arbitral clause must be contained in a contract or arbitration agreement signed by the parties "or contained in an exchange of letters or telegrams." 186 F.3d at 217-18. Here, there was an exchange of writings; in its September 19, 2015 email to DTS, Meduri confirmed its purchase of the single infusion line represented by the Price Overview and August Quotation. Wakker Decl., Ex. D. This satisfies the New York Convention. *Standard Bent Glass*, *supra*, 333 F.3d at 449-50 (exchange of proposals including one that referenced Orgalime Conditions satisfies Convention).

Page 15 -   Defendant's Reply in Support of Motion to Refer Parties to Arbitration and Stay Proceedings

4845-5781-3325.10

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

### III.   CONCLUSION

For the foregoing reasons, DTS respectfully requests that the Court grant its Motion to Refer Parties to Arbitration and Stay Proceedings, so DTS and Meduri can arbitrate their dispute at the ICC in accordance with their agreement.

DATED:  September 6, 2017.

        MILLER NASH GRAHAM & DUNN LLP

*s/ M. Christie Helmer*
M. Christie Helmer, OSB No. 743400
chris.helmer@millernash.com
John F. Neupert, P.C., OSB No. 783168
john.neupert@millernash.com
Sanja Muranovic, OSB No. 171774
sanja.muranovic@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

Attorneys for Defendant Dutch TecSource B.V.

Page 16 -   Defendant's Reply in Support of Motion to Refer Parties to Arbitration and Stay Proceedings

4845-5781-3325.10

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Defendant's Reply in Support of Motion to Refer Parties to Arbitration and Stay Proceedings on:

> Mr. Jeffrey M. Edelson
> Mr. Dallas DeLuca
> MARKOWITZ HERBOLD PC
> Suite 3000 Pacwest Center
> 1211 S.W. Fifth Avenue
> Portland, Oregon  97204
> Fax:  (503) 323-9105
> E-mail:  jeffedelson@markowitzherbold.com
> E-mail:  dallasdeluca@markowitzherbold.com
>
> Attorneys for Plaintiff Meduri Farms, Inc.

by the following indicated method or methods on the date set forth below:

☒ **CM/ECF system transmission.**

☐ **E-mail.**  (Courtesy copy.)

☐ **E-mail.**  As required by Local Rule 5-11, any interrogatories, requests for production, or requests for admission were e-mailed in Word or WordPerfect format, not in PDF, unless otherwise agreed to by the parties.

☐ **First-class mail, postage prepaid.**

☐ **Hand-delivery.**

☐ **Overnight courier, delivery prepaid.**

DATED:  September 6, 2017.

*s/ M. Christie Helmer*
M. Christie Helmer, OSB No. 743400
chris.helmer@millernash.com

Of Attorneys for Defendant Dutch TecSource B.V.

Page 1 -    Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204